GENERAL ELECTRIC CO., PLAINTIFF *v.* UNITED STATES, DEFENDANT, AND TORRINGTON CO. AND FEDERAL-MOGUL CORP, DEFENDANT-INTERVENORS

Court No. 91–08–00588

(Dated April 21, 1993)

*McKenna & Cuneo (Peter Buck Feller* and *Lawrence J. Bogard)* for plaintiff.
*Stuart E. Schiffer,* Acting Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Velta A. Melnbrencis);* of counsel: *Stephen J. Claeys,* Attorney-Advisor, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.
*Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Geert De Prest, Christopher J. Callahan* and *John M. Breen)* for The Torrington Company.
*Frederick L. Ikenson, P.C. (Frederick L. Ikenson, J. Eric Nissley* and *Joseph A. Perna, V)* for Federal-Mogul Corporation.

OPINION

TSOUCALAS, *Judge:* The administrative determination under review in this proceeding is the Department of Commerce, International Trade Administration's ("ITA") *Results Pursuant to Court Remand of Antifriction Bearings from Japan, General Electric Company v. United States, Remand, Court No. 91–08–00588 September 29, 1992 ("Remand Results").* Plaintiff, General Electric Company ("GE"), moves pursuant to Rules 1 and 7 of the Rules of this Court for a second remand in this

case alleging that the ITA incorrectly continued to use sales from outside the period of review in calculating antidumping duties to be assessed against GE's imports of antifriction bearings ("AFBs"). *Plaintiff's Memorandum in Opposition to Remand Results ("Plaintiff's Memorandum")*.

Defendant states that "[a]fter further review of the information submitted by plaintiff, Commerce agrees that the eight sales identified by plaintiff occurred before the period of review, and that the case should be remanded to Commerce for exclusion of the eight sales from the calculation of plaintiff's antidumping duties and recalculation of the antidumping duties." *Defendant's Response to Plaintiff's Motion for a Second Remand ("Defendant's Response")* at 1–2.

Defendant-intervenor The Torrington Company ("Torrington") opposes plaintiff's motion for a second remand and has filed a motion of its own requesting this Court to affirm the remand results filed on January 5, 1993 by the ITA with this Court. *Response of The Torrington Company to GE Memorandum in Opposition to Remand Results ("Torrington's Opposition")* at 2–10; *Motion of The Torrington Company for Entry of Judgment Affirming Remand Results*. GE opposes Torrington's motion to affirm the remand results. *Plaintiff's Opposition to Motion of Torrington Company for Judgment Affirming Remand Results*.

Defendant-intervenor Federal-Mogul Corporation has not responded to these motions.

A complete description of the issues and background of this case is presented at *General Elec. Co. v. United States,* 16 CIT 864, 802 F. Supp. 474 (1992), familiarity with which is presumed. The central issue now before this Court is whether upon remand GE presented substantial evidence to the ITA which shows that certain AFB sales occurred outside the period of review and therefore should not have been used in assessing dumping duties on GE's entries of AFBs from Japan made during the period of review.

In order to calculate the actual amount of antidumping duties to be assessed on imports of AFBs, the ITA requests each respondent to report the date of sale for each sale of AFBs within the period of review. In this administrative review, the period of review was from November 9, 1988 to April 30, 1990. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan; Final Results of Antidumping Duty Administrative Reviews,* 56 Fed. Reg. 31,754 (1991).

In the questionnaire sent by the ITA to each respondent the ITA defined the date of sale as

> typically the purchase order date, the contract date, or, where written confirmation is given, the order confirmation date (*i.e., the point in the transaction where the basic terms of the contract, particularly price and quantity, are agreed to by the parties involved*). In the case of a long-term contract or a "requirements" contract, the date of sale is the date of the contract. If terms of sale are subject to

> change, *and do in fact change,* up to, or even subsequent to, the date of shipment, then the date of the agreement to the new terms of sale or the date of shipment may be the appropriate date of sale.

Administrative Record Japan Public Doc. ("AR Japan Pub. Doc.") 39 (emphasis added).

The ITA has consistently considered the date of sale to be the date upon which all material terms of the contract for sale are set, especially price and quantity. Even in situations where a material term is indefinite, the ITA will consider the date of sale to be the date of the contract if the contract provides a mechanism outside of the parties control which sets the indefinite term. This definition of date of sale has been upheld by the United States Court of Customs and Patent Appeals, predecessor to the Court of Appeals for the Federal Circuit, as well as this court. *See Voss Int'l Corp. v. United States,* 67 CCPA 96, 104–05, C.A.D. 1253, 628 F.2d 1328, 1334–35 (1980); *Toho Titanium Co. v. United States,* 14 CIT 500, 501–03, 743 F. Supp. 888, 890–91 (1990); *Mitsubishi Elec. Corp. v. United States,* 12 CIT 1025, 1055, 700 F. Supp. 538, 561–62 (1988), *aff'd on other grounds,* 898 F.2d 1577 (Fed. Cir. 1990).

The sales which GE alleges were made outside of the period of review were made pursuant to two long-term contracts. GE had entered into these contracts with NTN Corporation ("NTN") prior to the period of review. In its questionnaire response in this review NTN reported dates of sale for these sales within the period of review. GE presented evidence to the ITA upon remand that showed that the dates of sale reported by NTN were in fact only the dates of amendments to the long-term contracts which did not change the material terms of the contracts. Therefore, GE alleges that the correct dates of sale for these imports are the dates on which GE and NTN entered into the long-term contracts. *Plaintiff's Memorandum* at 8–18.

GE argues that in the remand results the ITA changed its definition of date of sale to one requiring a showing that the terms of the long-term contracts were "irrevocably set" prior to the period of review in order for the sales not to be considered. *Id.* at 18–25 (*quoting Remand Results* at 5).

Torrington argues that GE failed to submit information which shows that the terms of sale for these long-term contracts were not subject to change during the period of review. Therefore, Torrington argues that the dates of the amendments to the long-term contracts reported by NTN as the dates of sale are the correct dates of sale. *Torrington's Opposition* at 2–6. Torrington also argues that the ITA verified NTN's sales data and that GE's information has not been verified. Therefore, the ITA should at a minimum be required to verify GE's submission and reconcile the conflict between the sales dates supplied by GE and NTN. *Id.* at 6–8. Finally, Torrington argues that 19 U.S.C. § 1675(a)(2) (1988) requires the ITA to calculate margins for all entries of AFBs which occurred during the period of review. Torrington points out that the entries at issue occurred during the period of review, therefore, the ITA

is required to calculate some margin for them even if the ITA finds that the dates of sale were outside of the period of review. *Id.* at 9–10.

In response to Torrington, GE argues that the information it submitted is not inconsistent with the verified NTN data because the ITA's verification team never reviewed the underlying purchase orders and had no reason to question the dates of sale reported by NTN. GE also argues that verification of GE's data is not required by the statute and would be a waste of time because the ITA would simply look at the originals of the documents GE submitted on remand. *Reply of General Electric Company to Torrington Company's Response to GE's Memorandum in Opposition to Remand Issues* at 6–7.

In addition, GE points out that Torrington's concern that the entries of AFBs at issue in this case will escape the assessment of antidumping duties is misplaced because in this review the ITA

> reviewed sales rather than entries during the period of review, and therefore cannot derive duties on an entry-by-entry basis. Since units entered and units sold are almost identical in purchase price situations, we can collect a close approximation of the total dumping duty liability by calculating importer-specific per-unit amounts for sales during the period of review and applying those per-unit amounts to entries during the period.

*Id.* at 8–10 (*quoting Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review,* 56 Fed. Reg. 31,692, 31,701 (1991)). Use of this methodology by the ITA will result in the assessment of the correct amount of antidumping duties on all of GE's entries of AFBs made during the period of review. *Id.*

This Court has examined the complete administrative record of this remand. Using the definition of date of sale contained in the ITA's questionnaire, the information submitted by GE clearly shows that the dates of sale for the entries in question are outside of the period of review. AR Japan Pub. Doc. 39; Remand Record Public Doc. 2. Removal of the sales made pursuant to these two long-term sales contracts from the calculation of the assessment rate on GE's entries will allow these duties to be correctly calculated. Use of the ITA's proposed assessment methodology will allow for the correct assessment of antidumping duties on all of GE's AFB entries which occurred within the period of review.

Also, the ITA is not required to verify all information upon which it relies in an administrative review. *See* 19 U.S.C. § 1677e(b)(3) (1988); *cf. Industrial Quimica Del Nalon, S.A. v. United States,* 14 CIT 143, 145, 732 F. Supp. 1180, 1182, *appeal denied,* 904 F.2d 44 (Fed. Cir. 1990); *Florex v. United States,* 13 CIT 28, 34, 705 F. Supp. 582, 589 (1989). In this case there is no conflict between verified information and non-verified information. While it is true that the ITA verified NTN's questionnaire response, the ITA verified NTN's reported sales dates based only on the information provided by NTN. ITA was not aware of the problem with the reported sales dates and did not look to the underlying docu-

mentation which has since been provided by GE. In addition, verification of GE's submission would entail sending an ITA verification team simply to look at the originals of the documents which GE has submitted and which the Court deems unnecessary.

Given that this Court finds that a second remand is necessary in this case and that the defendant consents to a second remand, this Court remands this case to the ITA to recalculate the antidumping duties to be assessed against GE's entries made during the period of review by excluding from the calculation of this assessment rate the eight sales identified by GE as occurring prior to the period of review. The ITA will report the results of this remand to this Court within fifteen (15) days of the entry of this opinion. Further, Torrington's motion to affirm the remand results is denied.